UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRAULIO BATISTA, : 1:13-CV-00126
:
    Plaintiff :
:
: (Judge Rambo)
v. :
: (Magistrate Judge Schwab)
LIEUTENANT DANNER and :
UNITED STATES OF AMERICA, :
:
    Defendants :

# REPORT AND RECOMMENDATION

## I. Introduction.

The plaintiff, Braulio Batista, claims that his cellmate attacked and injured him. He filed a complaint raising a claim under the Federal Tort Claims Act against the United States and an Eighth Amendment failure-to-protect claim against a lieutenant at the Federal Correctional Institution at Allenwood. The defendants filed a motion to dismiss and for summary judgment. Even after the court ordered Batista to file a brief in opposition to that motion, he failed to do so, and he has failed to keep the court informed of his address. After analyzing the applicable factors, we conclude that the case should be dismissed based on Batista's failure to prosecute this action. We also analyzed the merits of the defendants' motion to dismiss and for summary judgment, and we conclude that the motion should be granted.

**II. Background and Procedural History.**

Batista began this action by filing a complaint naming as defendants the United States of America and Lieutenant Danner of the Federal Correctional Institution at Allenwood.  Batista alleges that, while he was incarcerated in the Special Housing Unit (SHU) at Allenwood, he was housed with an inmate who threatened to assault him.  Fearing for his safety, Batista alleges that he sent a "cop-out" to Lieutenant Danner informing him of the threat and requesting to be moved to another cell.  The next day, Batistata alleges, he spoke to Danner in person and informed him that he feared for his safety, and he again requested to be moved.  According to Batista, his warnings and requests were ignored, and his cellmate assaulted him.

The defendants filed a motion to dismiss and for summary judgment.  They also filed a brief, a statement of material facts, and supporting documents.  We ordered Batista to file, on or before May 6, 2013, a brief in opposition to the defendants' motion, a counterstatement of material facts, and any transcripts, affidavits, or other relevant documentation in accordance with Local Rules 7.6 and 56.1.  Batista has not responded in any manner to the defendants' motion to dismiss

and for summary judgment. And our Order directing him to do so has been returned to the court as undeliverable with a notation that Batista is no longer at the address he has on file with the court. A search for Batista using the Bureau of Prisons' Inmate Locator available on the Bureau of Prisons's website ([www.bop.gov](www.bop.gov)) indicates that Batista was released on October 11, 2013.

**III. Discussion.**

### A. Under the Rules of this Court, Batista Should Be Deemed Not to Oppose the Motion to Dismiss and for Summary Judgment.

At the outset, under the Local Rules of this court, Batista should be deemed not to oppose the motion to dismiss and for summary judgment since he has failed to timely oppose the motion or otherwise litigate this case. Batista's procedural default frustrates and impedes efforts to resolve this matter in a timely and fair fashion.

Local Rule 7.6 imposes an affirmative duty on a litigant to respond to motions and provides that "[a]ny party who fails to comply with this rule shall be deemed not to oppose such motion." At the time that he filed his complaint, Batista received a

3

copy of the Court's Standing Practice Order, which warned him in clear and precise terms of the consequences that would flow from failure to comply with Local Rule 7.6 and briefing schedules set by the Court:

> If the party opposing the motion does not file his or her brief and any evidentiary material within the 14-day time frame, Local Rule 7.6 provides that he or she shall be deemed not to oppose the moving party's motion. The motion may therefore be granted if: (1) the court finds it meritorious; or (2) the opposing party fails to comply with Local Rule 7.6 despite being ordered to do so by the court.

*Doc. 6* at 2. The Standing Practice Order also reminded Batista of his duty to keep the court informed of his current address, and it warned him that if the court is unable to communicate with him because he has failed to notify the court of his current address, he will be deemed to have abandoned the lawsuit. *Id.* at 4.

In this case, Batista has not complied with Local Rule 7.6 or this Court's order to respond to the defendants' motion. Nor has he keep the court informed of his address. These procedural defaults compel the court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever

> possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion. . . ."

*Lease v. Fishel,* 712 F.Supp.2d 359, 371 (M.D.Pa. 2010)(quoting *McCurdy v. American Bd. of Plastic Surgery,* 157 F.3d 191, 197 (3d Cir. 1998)). With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion.'" *Id.* Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

Such basic principles of fairness apply here. In this case, Batista has failed to comply with Local Rule 7.6, he has failed to file a brief in opposition to the defendants' motion even after being ordered to do so, and he has failed to keep the

court informed of his address. These failures now compel us to deem Batista to not oppose the motion to dismiss and for summary judgment.

Nevertheless, Batista's failure to file a brief in opposition alone is not sufficient for the court to dismiss the case. In *Stackhouse v. Mazurkiewicz*, 951 F.2d 29 (3d Cir. 1991), the Third Circuit reversed a district court's dismissal based on the *pro se* plaintiff's failure to file a brief in accordance with a local rule of court. The Third Circuit stated that failure to obey the local rule should not form the basis for dismissal without an analysis of the merits of the case. *Id.* at 30. The court noted that dismissal was not to be ruled out if the party was represented by an attorney and in fact did not oppose the motion. *Id.* The court also noted: "Nor do we suggest that if a party fails to comply with the rule after a specific direction to comply from the court, the rule cannot be invoked. Thus, our holding is not broad." *Id.* at 30.

Although this caveat from the *Stackhouse* case might suggest that the Court could grant the motion to dismiss and for summary judgment in this case based on Batista's failure to file a brief in opposition after being ordered to do so by the court, the Third Circuit has subsequently declined "to adopt an interpretation of *Stackhouse* under which a district court may dismiss a case solely because a plaintiff

misses a briefing deadline set forth in a local rule or court-ordered briefing schedule." *Hernandez v. Palakovich,* 293 F.App'x 890, 895 (3d Cir. 2008). Rather, the Third Circuit has held that before dismissing a case as a sanction for failure to follow a court rule or court order, a court must consider the factors set forth in the seminal *Poulis* case. *Id.* at 894 (citing *Poulis v. State Farm Fire and Casualty Co.,* 747 F.2d 863, 868 (3d Cir. 1984)); *see also Shuey v. Schwab,* 350 F.App'x 630, 633 (3d Cir. 2009)("*Poulis* has been cited too often and is too deeply ingrained in the jurisprudence of this court and the district courts of this circuit for a court to assume that a party's failure to respond to a motion to dismiss can be regarded as an abandonment of the claim. *Poulis* governs the District Court's decision to dismiss the Shuey's claim, and it was error to dismiss without first considering the *Poulis* factors."). Thus, we turn to a consideration of the *Poulis* factors.

**B. Consideration of the *Poulis* Factors Warrants Dismissal of this Case.**

If the plaintiff fails to prosecute a case or to comply with court rules or court orders, pursuant to Fed.R.Civ.P. 41(b), the court may dismiss the action. Even though dismissal is an available sanction, it is a drastic sanction that "should be

7

reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff." *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 342 (3d Cir. 1982). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the court and will not be disturbed absent an abuse of that discretion. *Emerson v. Thiel College,* 296 F.3d 184, 190 (3d Cir. 2002). But that discretion, while broad, is governed by the following factors, commonly referred to as *Poulis* factors, which the court must balance in deciding whether to dismiss a case:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis,* 747 F.2d at 868. No single factor is dispositive, *Briscoe v. Klaus,* 538 F.3d 252, 263 (3d Cir. 2008), and each factor need not be satisfied for the court to dismiss an action, *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 221 (3d Cir. 2003). In this case, an assessment of the *Poulis* factors weighs heavily in favor of dismissing this action.

The first *Poulis* factor is the extent of the party's personal responsibility. A *pro se* litigant is personally responsible for failure to comply with a court's rules and orders. In this case, Batista is proceeding *pro se,* and so he is responsible for his failure to file a brief in opposition to the defendants' motion and his failure to keep the Court informed of his address. Batista failed to comply with the court rules and court orders, and he has neglected to litigate this case.

The second *Poulis* factor is prejudice to the adversary. Examples of prejudice are "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984). Prejudice for purposes of the *Poulis* analysis, however, does not mean irremediable harm. *Ware,* 322 F.3d at 222. "[T]he burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial." *Id.* In this case, Batista's failure to litigate this case and comply with court rules and court orders frustrates and delays resolution of this action, and so, such failure to litigate can be seen to prejudice the defendants, who are seeking a timely resolution of the case.

The third *Poulis* factor is a history of dilatoriness. While "conduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness,'" *Briscoe,* 538 F.3d at 261, "[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund*, 29 F.3d 863, 874 (3d Cir. 1994). A "party's problematic acts must be evaluated in light of [his] behavior over the life of the case." *Id.* at 875. In this case, Batista failed to respond in any manner whatsoever to the defendants' motion to dismiss and for summary judgment. He failed to do so even though the court ordered him to do so and even though he was warned at the outset of the case that if he fails to do so, the court may deem him to have abandoned the case. More fundamentally, he also failed to keep the court informed of his address or to in any way participate in this case after filing the case.

The fourth *Poulis* factor is whether the conduct was willful or in bad faith. "Willfulness involves intentional or self-serving behavior." *Adams,* 29 F.3d at 875. Here, Batista was ordered to file a brief in opposition to the pending motion, and he had been informed of the possible consequences of failing to do so. Still, he did not

file a brief in opposition. Nor did he communicate with the court in any manner such as to request an extension of time to comply. Batista's silence and complete failure to litigate this action lead to an inference that he has willfully abandoned this case.

The fifth *Poulis* factor is the effectiveness of alternate sanctions. Dismissal is a sanction of last resort, and it is incumbent upon the court to explore the effectiveness of lesser sanctions before ordering dismissal. *Poulis,* 747 F.2d at 868. Batista is proceeding *pro se* and *in forma pauperis*, and there is no evidence to support a reasonable inference that he would be able to pay monetary sanctions. Therefore, monetary sanctions, including attorney's fees and costs, would not be an effective sanction in this case. Further, Batista has shown a pattern of failing to comply with court rules and orders, and because he has failed to keep the Court informed of his address, the Court cannot contact him. Thus, further orders to him would not be effective. In this case, no sanction short of dismissal would be effective.

The sixth *Poulis* factor is the meritoriousness of the claim. In this inquiry, a claim will be deemed meritorious when the allegations of the complaint, if

established at trial, would support recovery. *Poulis,* 747 F.2d at 870. Here, in our view, consideration of this factor cannot save Batista's claims, since he is now wholly non-compliant with his obligations as a litigant. Furthermore, given that no single *Poulis* factor is dispositive, the facial merits of the claims, standing alone, do not warrant allowing the case to proceed despite Batista's abandonment of this case. In any event, as discussed below, this court lacks subject-matter jurisdiction over Batista's claim under the Federal Tort Claims Act (FTCA) because the claim falls under the discretionary function exception to the FTCA. Further, Batista's Eighth Amendment claim against Lieutenant Danner fails under the summary judgment record in this case. The lack of merit is yet another factor favoring dismissal of this action.

In sum, the *Poulis* factors weigh heavily in favor of dismissal.

**C. Batista's Claims Fail on the Merits.**

Batista presents both a FTCA claim against the United States and an Eighth Amendment claim against Liuetnant Danner. We address each in turn.

### 1. The FTCA Claim Against the United States.

"Under the doctrine of sovereign immunity, the United States 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Cooper v. C.I.R.*, 718 F.3d 216, 220 (3d Cir. 2013)(quoting *U. S. v. Testan*, 424 U.S. 392, 399 (1976)). "The FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances." *Sosa v. Alvarez-Machain,* 542 U.S. 692, 700 (2004)(quoting *Richards v. United States*, 369 U.S. 1, 6 (1962)). Federal district courts have jurisdiction over civil actions against the United States for damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstance where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

The FTCA's waiver of sovereign immunity contains a number of exceptions including the discretionary function exception, which provides that the FTCA shall not apply to "[a]ny claim based upon an act or omission of an employee of the Government . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 808 (1984). Through the discretionary function exception, Congress sought "to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort" and to "protect the Government from liability that would seriously handicap efficient government operations." *Id.* at 814.

"As a threshold matter, before determining whether the discretionary function exception applies, a court must identify the conduct at issue." *S.R.P. ex rel.*

*Abunabba v. United States*, 676 F.3d 329, 332 (3d Cir. 2012). After that, a two-part test is used to determine whether the discretionary function exception applies. *Baer v. United States*, 722 F.3d 168, 172 (3d Cir. 2013). "First, a court must 'consider whether the action is a matter of choice for the acting employee.'" *Id.* (quoting *Berkovitz v. United States,* 486 U.S. 531, 536 (1988)). "If a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' the exception does not apply because 'the employee has no rightful option but to adhere to the directive.' *S.R.P.*, 676 F.3d at 333 (quoting *Berkovitzs,* 486 U.S. at 536). "Second, a court must determine whether the judgment exercised 'is of the kind that the discretionary function exception was designed to shield.'" *Baer,* 722 F.3d at 172. "'Because the purpose of the exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy . . . the exception protects only governmental actions and decisions based on considerations of public policy.'" *S.R.P.*, 676 F.3d at 333 (quoting *United States v. Gaubert*, 499 U.S. 315, 323 (1991)).

While the plaintiff bears that burden of showing that his claim falls within the scope of the FTCA, the United States bears the burden of showing that the discretionary function exception applies. *Baer*, 722 F.3d at 172.

Here, Batista's claim is based on the failure of the Bureau of Prisons (BOP) to protect him from his cellmate by separating him from his cellmate. "While the BOP's conduct at issue is governed by a federal statute requiring the BOP to provide for the "protection" and "safekeeping" of inmates, *see* 18 U.S.C. § 4042(a)(2), the statute leaves the implementation of these duties to BOP officials' discretion." *Thrower v. United States*, 12-4386, 2013 WL 2392823 at *2 (3d Cir. June 3, 2013). "Moreover, there is no federal statute, regulation or policy that requires the BOP to take a particular course of action to ensure an inmate's safety from attacks by other inmates." *Rinaldi v. United States*, 460 F. App'x 80, 81 (3d Cir. 2012). Thus, this case satisfies the first prong of the applicable test under the discretionary function exception. "As to the second prong of the applicable test, a judgment as to how best to protect one prisoner from attack by another 'is of the kind that the discretionary function exception was designed to shield.'" *Id.* at 82 (quoting *Mitchell v. United States*, 225 F.3d 361, 363 (3d Cir. 2000)).

"Indeed, courts have regularly held that federal prisoners' FTCA claims for injuries caused by fellow inmates are barred by the discretionary function exception." *Thrower,* 2013 WL 2392823 at *2 (holding that discretionary function exception barred FTCA claim that BOP failed to protect prisoner by placing him in a cell with a dangerous cellmate); *see also Rinaldi*, 460 F. App'x at 81 (holding that discretionary function exception barred FTCA claim that the BOP was negligent in failing to separate prisoner from his assailant who had a known violent history); *Donaldson v. United States*, 281 F. App'x 75, 78 (3d Cir. 2008)(holding that discretionary function exception barred FTCA claim that the BOP repeatedly ignored prisoner's reports of sexual harassment and threats of violence and failed to protect him from another prisoner).

The discretionary function exception applies in this case. Thus, this court lacks subject-matter jurisdiction over the FTCA claim.

### 2. The Eighth Amendment Claim Against Lieutenant Danner.

Lieutenant Danner is entitled to summary judgment on the Eighth Amendment failure-to-protect claim against him for two reasons. First, Danner presented evidence, unrebutted by Batista, that Batista failed to exhaust

administrative remedies as to the claim against him as required by 42 U.S.C. § 1997e(a). Second, Danner presented evidence, again unrebutted by Batista, that he was on annual leave during the week that Batista was assaulted and that he did not talk to Batista until after the assault. Contrary to Batista's allegations, Danner was not aware of the danger to Batista. Thus, Batista cannot show that Danner was deliberately indifferent to a substantial risk of serious harm to him, a necessary element of an Eighth Amendment failure-to-protect claim. *See Hamilton v. Leavy,* 117 F.3d 742, 747 (3d Cir. 1997).

**V. Recommendation.**

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that the defendants' motion (doc. 13) to dismiss and for summary judgment be granted.

> The Parties are further placed on notice that pursuant to Local Rule 72.3:
>
> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and

all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of December, 2013.

>*S/Susan E. Schwab*
>Susan E. Schwab
>United States Magistrate Judge